Daniel Lohr

38965 Dexter Rd SPC 20

Dexter, OR 97431

Telephone: (541) 292-2829

Email: tinyhouseshed@gmail.com

Plaintiff, Pro Se

FILED 17 APR '26 16:18 USDC-ORE

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## EUGENE DIVISION

DANIEL LOHR,  Plaintiff

v.

COREY A. STROMING, Lane County

Deputy Sheriff, individually;

LANE COUNTY, a political subdivision;

LANE COUNTY SHERIFF'S OFFICE;

ERIN A. FENNERTY, Lane County Circuit

Court Judge, individually and officially

for declaratory and injunctive relief;

JULIE LOWELL, individually and

d/b/a JLP LAW, PC;

DOES 1-10,

Defendants.

Case No. 6:26-CV-00765-MTK

**COMPLAINT FOR VIOLATION**

**OF CIVIL RIGHTS**

**42 U.S.C. §§ 1983 AND 1985**

**JURY TRIAL DEMANDED**

Pd #15938

**PRELIMINARY STATEMENT**

1. This is 'Ham Sandwich Nation' - easy to indict, impossible to defend. A physician-father was arrested for attempting to serve federal court documents on his adult daughter - his only remaining way to communicate with her without risking arrest - based on a stalking protective order that the issuing judge has admitted in writing was entered without jurisdiction and is void ab initio. The State has used its police powers to sever a father-daughter relationship, strip Second Amendment rights, impose a virtual prison sentence of at least four years (two-year statutory bar on modification plus an estimated two-year appellate backlog), and block every mechanism through which the father could challenge these deprivations - all without a trial, without a conviction, and without a valid underlying order.

2. This case exposes a system of administrative coercion in which the process is the punishment. Approximately 94% of state criminal cases end in plea deals (NACDL Trial Penalty Report, 2018). Researchers estimate 2-8% of those convictions involve actually innocent defendants (Dervan & Edkins, 'The Innocent Defendant's Dilemma,' J. Crim. L. & Criminology, 2013). The Innocence Project reports 11% of DNA exonerees had pleaded guilty.

3. This case exposes the systemic weaponization of process. Research documents that 9.1% of the adult population meets criteria for at least one personality disorder (DSM-5-TR), with higher prevalence of Cluster B traits - the 'dark triad' of narcissism, psychopathy, and Machiavellianism - in adversarial and authority positions (Babiak & Hare, *Snakes in Suits*, 2006; Board & Fritzon, *Disordered Personalities at Work*, 2005). Oregon does not screen petitioners for this. Oregon does not screen law enforcement applicants for this. Oregon does not screen

judicial staff for this. The State gives its own employees the same pass that Plaintiff, as a physician, gave his wife during their marriage - the assumption that the people in positions of trust are psychologically healthy. The research says otherwise. Just as Plaintiff failed to 'put on his clinician hat' during his marriage, the State fails to examine its own.

4. Deprivation of rights under the guise of 'mental health' is particularly insidious. When a defendant is thrown into a mental health facility for 'restoration' - one can only assume 'restoration of sanity' - the person throwing remains unexamined. Galileo was found 'insane' for asserting the Earth orbited the Sun. The system that condemned him was later found to be wrong. Here, a physician-father is threatened with psychiatric commitment for asserting that a court's own certified records prove a void order. The 'thrower' - appointed counsel acting in concert with the State - may well suffer from the same diagnostic profile she accuses her client of suffering, yet no one examines her. This flips the presumption of innocence and strips constitutional rights under the color of therapeutic intervention.

5. Plaintiff's belief that his daughter was in danger arose not from paranoia but from clinical observation. The intense psychological stress of the divorce, documented in the research as pathological enmeshment (Minuchin, *Families and Family Therapy*, 1974; Baker & Ben-Ami, *To Turn a Child Against a Parent Is to Turn a Child Against Himself*, 2011), creates measurable harm to children of parents with Cluster B pathology. Plaintiff, as a physician, recognized the signs.

6. This is a matter of profound public interest affecting millions of families.

## JURISDICTION AND VENUE

7. Jurisdiction: 28 U.S.C. §§ 1331, 1343, 2201-2202. Venue: 28 U.S.C. § 1391(b).

## PARTIES

8. Plaintiff Daniel Lohr is a licensed physician, Lane County resident, and father of Nyah Lohr, age 25.

9. Defendant Corey A. Stroming is a Lane County Deputy Sheriff, sued individually.

10. Defendant Lane County is the political subdivision responsible for the OECI filing system, clerk policies, and Sheriff's Office.

11. Defendant Lane County Sheriff's Office maintains the LEDS entries.

12. Defendant Erin A. Fennerty is a Lane County Circuit Court Judge, sued individually and officially for declaratory/injunctive relief per *Pulliam v. Allen*, 466 U.S. 522 (1984).

13. Defendant Julie Lowell is an Oregon-licensed attorney, principal of JLP Law, PC. She represented Nyah Lohr in Case No. 26SK00238 and is sued individually for joint action with State actors.

14. Does 1-10 are individuals to be identified through discovery, including supervisory personnel at PDSLC and the DA's Office.

## STATEMENT OF FACTS

**A. The Family Context**

15. Following his divorce from Nancy Lohr (Canadian citizen), Plaintiff identified Cluster B pathology - parentification, learned helplessness, document interception, gatekeeping, and diagnosis flight. Both Nancy and Nyah hold Canadian citizenship.

16. On January 14, 2026, Nyah filed a stalking petition two days after Plaintiff delivered a birthday gift. At the ex parte hearing on January 16, Nyah disclosed under oath she had been on suicide watch for two weeks. No court examined her. Section 6 ('spoken or written threats') was left blank. The petition was filed at the mother's direction - proxy alienation identified in over 1,000 peer-reviewed publications. Harman et al., 53 Am. J. Fam. Therapy 117 (2024).

## B. The Scrivener's Error

17. On Wednesday, January 21, a deputy called Plaintiff to arrange service but lacked his address. Plaintiff proactively provided it. Realizing this could permanently terminate his parental communication, Plaintiff sent three 'last rites' emails early the next morning before service at approximately noon on January 22. The deputy's paperwork error turned these pre-service emails into alleged violations.

## C. The Void Order

18. On February 3, Plaintiff filed a Notice of Removal (Case No. 6:26-cv-00237-MC). Under 28 U.S.C. § 1446(d), the state court was divested.

19. On February 4, Defendant Lowell acknowledged receipt of the removal notice.

20. On February 6, the state court entered 'per EAF hearing remains on the docket' - actual knowledge.

21. On February 9, Fennerty conducted a 30-second hearing and entered a permanent order while divested. Lowell appeared and moved for the order despite knowing the court lacked jurisdiction. Had Lowell not appeared, no order could have issued.

22. On April 3, Fennerty's Order admits: void ab initio. (Exhibit A.)

23. The temporary order expired under *Granny Goose Foods*, 415 U.S. 423. No valid order existed on February 26.

## D. The Deceptive Arrest

24. On February 26, Plaintiff facilitated service of federal court documents - his only remaining legal channel to communicate with his daughter - through a process server. Nancy confronted the server face-to-face and had an argument as she attempted to intercept the paperwork, a phenomenon known in the clinical literature as 'gatekeeping' - a documented trait of Cluster B pathology (Harman & Matthewson, *Parental Alienating Behaviors*, in Parental Alienation: Science and Law 82-141 (2020)). Despite 25 years of marriage and a direct encounter with a person one foot shorter than Plaintiff, Nancy told Stroming it was Plaintiff at the gate. This is fabrication.

25. Stroming called Plaintiff and offered to assist with service of the federal court documents - deceiving Plaintiff into leaving his home. Instead of serving, Stroming arrested him. The federal documents - the only remaining legal channel for a father to communicate with his own child - remained unserved and were seized.

26. Plaintiff was never served the permanent order. 'Return - Service (Not Served),' March 9, 2026. (Exhibit C.)

## E. The Procedural Lockdown

27. Appointed counsel refused to present certified records. On April 9: 'No further legal filings will be made prior to the conclusion of that evaluation.' (Exhibit D.) Counsel ordered a psych eval in retaliation for Plaintiff presenting certified records, calling them 'AI.'

28. On April 6, Plaintiff requested a *State v. Smith* inquiry. The judge: 'I don't know what that is.' (Exhibit E.)

29. On April 9, TylerTech rejected Plaintiff's filing. Clerk: 'must be filed by the attorney.' In person: same answer. (Exhibit F.)

30. Counsel's refusal creates a conflict under Oregon RPC 1.7. This action further creates a personal-interest conflict requiring withdrawal.

## F. LEDS Entry

31. LEDS/NCIC entries based on the void order create heightened risk during traffic stops and affect Plaintiff's license, housing, and safety. (Exhibit C.)

## G. Bad Faith Prosecution

32. The prosecution was initiated and is maintained in bad faith. The issuing judge admitted the order is void. The arrest was procured through deception. Exculpatory records were ignored. Pro se filings were blocked. The State prosecutes based on a judicially-admitted nullity. These facts demonstrate a prosecution brought for harassment and to punish the exercise of federal removal rights, not to vindicate any legitimate governmental interest.

## H. Deprivation of Rights Under the Guise of Mental Health

33. Once in 'restoration,' the defendant loses all rights during the term - they are thrown into a mental health facility, yet the person throwing remains unexamined. Meanwhile, the defendant loses all rights during 'restoration of sanity.' Under *Sell v. United States*, 539 U.S. 166 (2003), the State's power to manage a defendant's mind has constitutional limits. Using a psych eval to silence a jurisdictional defense is 'Pretextual Shunting.'

**I. The Uvalde Parallel**

34. This case presents a devastating parallel to Uvalde, Texas, May 24, 2022, where nearly 400 law enforcement officers waited more than 70 minutes while a gunman murdered 19 children and two teachers inside a classroom. While the officers stood in the hallway doing nothing, parents outside were handcuffed, tackled, tased, and pepper-sprayed for trying to reach their children. Multiple parents were arrested. One mother, Angeli Rose Gomez, was handcuffed by U.S. Marshals for 'intervening in an active situation' - the 'situation' being the murder of elementary school students that the police were failing to stop. When she was freed, she jumped a fence and rescued her own children while police chased her. The police chief was later indicted on ten counts of abandoning and endangering children.

35. Here, the State of Oregon has done the same thing: it has arrested, handcuffed, and prosecuted the one individual trying to render aid to a child in crisis - a physician-father - while providing a secure perimeter for the potential abuser. The child who disclosed suicidal ideation remains with the unexamined mother. The father is locked in the system. The State chose sides. It chose wrong. And just like Uvalde, the actors who made the wrong choice have immunity.

## CLAIMS FOR RELIEF

## COUNT I: FOURTH AMENDMENT - FALSE ARREST (Stroming)

36. Void order. Expired temporary. Never served. No lawful authority. Deception. Seized federal documents. Scrivener's error - pre-service emails. Good faith inapplicable (Feb 6 notation). *Granny Goose Foods*, 415 U.S. 423.

## COUNT II: FIRST AMENDMENT - RETALIATION/OVERBREADTH (All)

37. Core protected parental speech. Section 6 blank. *Counterman* recklessness standard. Compliance criminalized (pre-service emails). Arrest while serving federal documents = retaliation. *Whitney v. California* (Brandeis): 'More speech, not enforced silence.' ORS 163.750 overbroad under *Counterman, Troxel, Mirabelli*.

## COUNT III: FOURTEENTH AMENDMENT - VOID ORDER (Fennerty & County)

38. Fennerty entered order while knowingly divested. Her own Order admits it. Continued enforcement violates substantive due process. *Pulliam*, 466 U.S. 522.

## COUNT IV: FOURTEENTH AMENDMENT - LEDS MAINTENANCE (Sheriff)

39. Entries based on void order. Ongoing harm. Duty to purge.

## COUNT V: PROCEDURAL LOCKDOWN / ACCESS TO COURTS (Lane County - Monell)

40. OECI + clerk policy blocks pro se filings. *Zinermon v. Burch*, 494 U.S. 113; *M.L.B. v. S.L.J.*, 519 U.S. 102; *Bounds v. Smith*, 430 U.S. 817. *Monell* - official policy, TylerTech contract, failure to train.

## COUNT VI: PARENT-CHILD INTERFERENCE (All)

41. *Troxel*, 530 U.S. at 65. Collective severance. Uvalde parallel. Suicidal daughter separated from physician-father. Mother unexamined.

## COUNT VII: EIGHTH AMENDMENT - CRUEL AND UNUSUAL (All)

42. Void order + LEDS + four-year effective bar (two-year modification bar under ORS 30.866 requiring no contact and residence 60+ miles away, plus estimated two-year appellate backlog) + filing blockade + threat of involuntary commitment = cruel and unusual punishment without conviction. *Youngberg v. Romeo*, 457 U.S. 307. The four-year bar is grossly disproportionate to the 'crime' of sending movie recommendations.

## COUNT VIII: § 1985(3) - CONSPIRACY (Does 1-10)

43. Meeting of the minds to use ORS 161.370 as pretextual silencer. *Adickes v. S.H. Kress*, 398 U.S. 144. Parallel conduct: certified records → immediate psych eval threat → filings blocked → prosecution continues → total silencing.

## COUNT IX: SIXTH AMENDMENT - GIDEON TRAP (All)

44. *Gideon* turned into a weapon. OECI blocks pro se while counsel refuses to act and uses Dusky Gap to toll clocks. *Sell*, 539 U.S. 166; *Cronic*, 466 U.S. 648. Right to counsel as right to be silenced.

## COUNT X: JOINT ACTION UNDER COLOR OF LAW (Lowell)

45. *Dennis v. Sparks*, 449 U.S. 24; *Lugar*, 457 U.S. 922. Lowell, with actual knowledge of divestiture, appeared and moved for permanent order. Without her, no order issues. Joint action with Fennerty to produce a legal nullity.

## COUNT XI: SECOND AMENDMENT - UNLAWFUL DISARMAMENT (All)

46. *Rahimi*, 602 U.S. ___. Requires 'credible threat to physical safety.' Section 6 blank. 'I am scared' is a feeling, not a finding. Oregon permits disarmament on subjective alarm without mens rea. Void order cannot be the predicate for stripping 2A rights.

## COUNT XII: FOURTEENTH AMENDMENT - STATE-SPONSORED PARENTAL ALIENATION / INTERFERENCE WITH FAMILIAL ASSOCIATION (All Including Lowell)

47. Parents and children possess a constitutionally protected liberty interest in companionship and society. *Smith v. City of Fontana*, 818 F.2d 1411, 1418 (9th Cir. 1987). This extends to adult children. *Id.* at 1419; *Strandberg*, 791 F.2d 744. Plaintiff has demonstrated 25 years of consistent involvement. *Wheeler*, 894 F.3d 1046.

48. State interference shocks the conscience when actors act with deliberate indifference after time to deliberate. *Porter v. Osborn*, 546 F.3d 1131; *Scott v. Smith*, 109 F.4th 1215. Fennerty had three days (Feb 6-9). Lowell had six days (Feb 3-9). Stroming deliberated before calling. Each recognized the unreasonable risk. *Herrera*, 18 F.4th 1156.

49. Under the state-created danger exception to *DeShaney*, 489 U.S. 189: The State knew Nyah was suicidal (Jan 16 testimony). The State severed the one relationship that could provide clinical intervention. The State arrested the rescuer, seized his court documents, and locked the courthouse doors. The State did not merely fail to protect Nyah. The State actively prevented her father from protecting her.

50. The alienation is ongoing: Plaintiff cannot contact his daughter. Nyah cannot contact him even if she needed help. LEDS flags him nationwide. The effective four-year bar means 2030 at earliest before any realistic chance of modification. When the State sponsors such alienation through void orders, arrests for birthday gifts, seized court documents, and blocked courthouse doors, the State becomes the instrument of abuse, not the protector against it. Harman et al. (2024): parental alienation is a recognized form of family violence and child abuse.

## **PRAYER FOR RELIEF**

A. Declaratory judgment that the February 9 order is void ab initio.

B. Declaratory judgment that ORS 30.866 and 163.750 violate the First, Second, Eighth, and Fourteenth Amendments as applied.

C. Injunctive relief ordering immediate LEDS/NCIC purge.

D. Injunctive relief ordering Lane County to modify OECI for pro se conflict filings.

E. Preliminary injunction ordering the clerk to accept Plaintiff's filings pending resolution.

F. Declaratory judgment that Lowell's appearance constituted joint action under color of law.

G. Compensatory damages for false arrest, emotional distress, and professional harm.

H. Compensatory damages for state-sponsored destruction of the parent-child relationship.

I. Punitive damages against Stroming and Lowell.

J. Attorney fees under 42 U.S.C. § 1988.

K. Such other relief as this Court deems just.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all claims so triable.

DATED: April 17, 2026

Daniel Lohr, Plaintiff Pro Se

38965 Dexter Rd SPC 20, Dexter, OR 97431

(541) 292-2829 | tinyhouseshed@gmail.com